IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
BEAUMONT DIVISION

| | |
|---|---|
| GATEWAY SENIOR HOUSING, LTD., GATEWAY SENIOR HOUSING I, L.L.C. and RICK J. DEYOE<br>Plaintiffs<br><br>vs.<br><br>MMA FINANCIAL, INC. F/K/A MMA FINANCIAL, L.L.C., MMA CONSTRUCTION FINANCE, L.L.C. F/K/A MUNIMAE MIDLAND CONSTRUCTION FINANCE, L.L.C., MMA AFFORDABLE HOUSING GROUP TRUST F/K/A MIDLAND AFFORDABLE HOUSING GROUP TRUST, and MMA MORTGAGE INVESTMENT CORPORATION F/K/A MIDLAND MORTGAGE INVESTMENT CORPORATION<br><br>Defendants | Civil Action No. 06-CV 458<br><br>JURY |

## PLAINTIFF'S FIRST AMENDED ORIGINAL COMPLAINT

COME NOW GATEWAY SENIOR HOUSING, LTD., GATEWAY SENIOR HOUSING I, LLC, AND RICK J. DEYOE, Plaintiffs in the above cause, and having sought leave of Court, file this First Amended Original Complaint, and would show the Court as follows:

### I.
### PARTIES

1. Plaintiff, Gateway Senior Housing, Ltd., is a Texas limited partnership whose members are all citizens of the State of Texas.

2. Plaintiff, Gateway Senior Housing I, L.L.C., is a limited liability company with its members being all citizens of the State of Texas.

3. Plaintiff, Rick J. Deyoe is an individual who is a resident and citizen of the State of Texas.

4. Defendant, MMA Financial, Inc., f/k/a MMA Financial, L.L.C., is a Maryland Corporation, with a principal business address of 621 E. Pratt Street, Suite 300, Baltimore, Maryland.

5. Defendant, MMA Construction Finance, L.L.C., f/k/a Munimae Midland Construction Finance, L.L.C., is a Maryland limited liability company with a principal business address of 218 N. Charles Street, Suite 300, Baltimore, Maryland 21201-3140.

6. Defendant, MMA Affordable Housing Group Trust f/k/a Midland Affordable Housing Group Trust, is a Florida business entity with a principal business address of 621 East Pratt Street, Suite 300, Baltimore, Maryland 21202.

7. Defendant, MMA Mortgage Investment Corporation f/k/a Midland Mortgage Investment Corporation is a Florida corporation with its principal place of business located at a business address of 621 E. Pratt Street, Suite 300, Baltimore, Maryland.

8. All Defendants have appeared herein.

## II.
## JURISDICTION AND VENUE

9. This case was removed from the 172nd State District Court in Jefferson County, Texas based upon diversity of citizenship under 28 U.S.C. § 1332(a). The amount in controversy is in excess of $75,000.00.

10. Venue in the Eastern District of Texas is proper under 28 U.S.C. § 1391(a)(2).

## III.
## FACTS

11. On or about June 30, 2003, Plaintiff, Gateway Senior Housing, Ltd., entered into a Loan Agreement with Defendants, Munimae Midland Construction Finance, L.L.C. [now known as MMA Construction Finance, L.L.C.], Midland Affordable Housing Group Trust [now known as MMA Affordable Housing Group Trust], and MMA Financial, L.L.C. [now known as

MMA Financial, Inc.], to provide financing for the construction of 116 unit senior housing project in the City of Beaumont, Jefferson County known as "Gateway Village Seniors Apartment." Plaintiff, Gateway Senior Housing I, LLC, was the managing general partner of Gateway Senior Housing, Ltd., and together with Plaintiff, Rick J. Deyoe, were the guarantors for Gateway Senior Housing, Ltd. The Plaintiffs shall hereafter be referred to collectively as "Plaintiff."

12. The construction loan was for the sum of $4,072,033.00. Incorporated into said Loan Agreement was a Construction Loan Commitment to Plaintiffs dated June 9, 2003, wherein Defendant, Midland Mortgage Investment Corporation [now known as MMA Mortgage Investment Corporation], served as the originator and underwriter of the construction loan for Munimae Midland Construction Finance, L.L.C. [now known as MMA Construction Finance, L.L.C.], and a Permanent Loan Commitment to Plaintiff dated June 9, 2003, wherein Defendant, Midland Affordable Housing Group Trust [now known as MMA Affordable Housing Group Trust], agreed to fund the permanent loan in connection with the senior housing project, once the conditions specified therein had been met. The permanent loan commitment was for a maximum sum of $2,340,000.00. Collectively, the Loan Agreement, the Construction Loan Commitment and the Permanent Loan Commitment are hereinafter sometimes referred to as the "Loan Documents." The construction loan was specified to be for a term of the earlier of a date (i) which was twenty-four (24) months from the date of closing, or (ii) on which the permanent loan funded. The Loan Agreement, Article 8.09 (g) specifically provided that "Time is hereby expressly made the essence of this Agreement."

13. Construction of the project commenced in 2003. In June 2004, the housing project had been substantially completed, and leasing of units commenced. By May 2005, occupancy was

well in excess of ninety percent (90%), and Plaintiff initiated the conversion process. Normally this conversion process should have taken thirty (30) to sixty (60) days to complete. Plaintiff achieved rental of more than ninety percent (90%) occupancy, with written lease agreements with qualifying tenants for three consecutive months, and had achieved net operating income greater that $196,210.00, as required by the Loan Documents. Plaintiff provided to Defendants all documentation necessary for conversion to the permanent loan.

14. Within the term of the construction loan, Plaintiff had met all conditions for conversion to the permanent loan. Pursuant to Article 1.04(e) of the Loan Agreement, once the Plaintiff satisfied the permanent loan conditions, "the Permanent Loan shall be funded." However, Defendants failed and refused to convert the construction loan to the permanent loan, as agreed in the Loan Documents. Time was of the essence.

15. On September 24, 2005, Hurricane Rita struck the Beaumont, Texas area, causing widespread damage. Despite damage to the Gateway Housing project, Gateway maintained occupancy in excess of ninety-three percent (93%) in the months after the storm, and continued to seek conversion of the construction loan to the permanent loan in accordance with the Loan Agreement. However, Defendants still failed and refused, without just cause, to convert the loan. In October 2005, Defendants advised Plaintiffs that they had halted all underwriting for the permanent loan, pending repair of the project, and that once the repairs had been completed, Plaintiff would have to re-initiate the conversion process by demonstrating a minimum of three months at ninety percent (90%) occupancy, before the underwriting process would resume. All the while, the Defendants continued to charge Plaintiff unwarranted and improper extension fees in the sum of $15,270.12 per month. In all, Defendants charged Plaintiff $198,511.56 in extension fees.

16. As a result of Defendants failure to convert the construction loan to permanent financing, Plaintiff was forced to seek alternate third party financing on or about August 4, 2006. As a result of having to seek alternate third party financing, Plaintiff incurred additional expenses and damages, including a "prepayment penalty" in the amount of $203,601.70, improperly assessed by Defendants as part of the payoff of the construction loan, which had matured more than a year earlier.

17. Plaintiff fully performed and/or substantially performed all of its obligations under the Agreements in question.

## IV.
## BREACH OF CONTRACT

18. By failing to timely convert the construction loan to the permanent loan, as provided in the Loan Documents, Defendants breached their agreements with Plaintiff, which proximately caused direct and consequential damages to Plaintiff.

19. As a result of the increase in interest rates, Plaintiff has incurred and will continue to incur higher interest charges than it would have incurred if the Defendants had not breached their agreements as set forth above, and timely converted the construction loan to a permanent loan as required by the Loan Documents.

20. Plaintiff would show the Court that the Defendants improperly charged the Plaintiff "extension fees" which would not have been charged had Defendants timely converted the construction loan to a permanent loan. The "extension fees" were improperly charged to Plaintiff, and were unwarranted under the Loan Agreement.

21. As a result of Defendants' failure to convert the construction loan to a permanent loan, Plaintiff has had no choice but to seek financing from PNC Real Estate Finance, incurring expense and processing fees in connection therewith that it would not have incurred had Defendants not

breached their agreements. Plaintiff paid the excessive and improperly charged extension fees and prepayment penalty under protest.

22. Upon conversion to the permanent loan, a portion of the unpaid developer fee was to be paid from the funds available. However, due to the unwarranted charges of extension fees and the prepayment penalty by the Defendants, the payment toward the developer fee was not able to be made at the permanent loan closing. Accordingly, the Plaintiff will incur increased interest charges on the developer fee note.

23. Further, as a result of the breach of contract by the Defendants, the guarantors will be caused to incur damages, including increased tax consequences as a result of Plaintiff's inability to pay down on the note for the developer's fee, due to the excessive and improper fees and penalties charged by Defendants.

## V.
## DAMAGES

24. As a direct and proximate result of defendants' breach, plaintiff suffered the following damages:

   a. Increased past interest in an amount of least $90,945.81;

   b. Increased future interest charges in an amount of at least $70,070.30;

   c. The sum of $198,511.56 in improperly assessed and unwarranted extension fees;

   d. An improperly assessed prepayment penalty in the amount of $203,601.70;

   e. Miscellaneous damages in an amount of at least $78,100.00, associated with the permanent loan commitment, caused by the Defendants breach, to wit:

   | | |
   |---|---|
   | Original Loan Application Fee (1/2) | $10,000.00 |
   | Permanent Loan Commitment Fee | 35,100.00 |
   | Lender Legal Fees (1/2) | 11,000.00 |
   | Borrower Legal Fees (1/2) | 20,000.00 |
   | Document Review | 2,000.00 |

6

    f.  Additional costs incurred in obtaining substitute third party financing in an amount of at least $20,400.00, to wit:

| | |
|---|---:|
| Rate Lock | 1,039.50 |
| Appraisal Fee | 6,500.00 |
| Architecture and Engineering Report | 1,950.00 |
| Environmental Rpt | 2,750.00 |
| Flood Certificate and Third Party Report | 160.50 |
| PNC Lender Ins. Consultant | 500.00 |
| PNC Processing Fee | 7,500.00 |

    g.  Increased cost of Interest on Developer Fee Note in an amount of at least $102,179.57

    h.  Increased Tax consequences for Guarantors in an amount of at least $127,936.90.

    i.  Reasonable and necessary attorney's fees.

## VI.
## ATTORNEY'S FEES

25. Plaintiff has made proper presentment and seeks recovery of reasonable and necessary attorneys fees incurred by or on behalf of Plaintiff herein, pursuant to Chapter 38 of the Texas Civil Practice & Remedies Code, and Section 37.009 of the Texas Civil Practice & Remedies Code.

## VII.
## CONDITIONS PRECEDENT

26. All conditions precedent required by the contracts at issue have been performed by Plaintiff.

## VIII.
## PRAYER

**WHEREFORE, PREMISES CONSIDERED**, Plaintiffs pray that upon a final hearing of this cause, that judgment be entered for the Plaintiffs against Defendants, jointly and severally, for damages as set forth above, together with prejudgment and postjudgment interest as permitted by law, attorney's fees, costs of court, and such other and further relief to which Plaintiffs may be justly entitled at law or in equity.

Respectfully submitted,

*[signature]*

JOE MICHAEL DODSON, Lead Attorney
DODSON LAW OFFICES, P.C.
8245 Gladys, Suite 102
Beaumont, Texas 77706
PH: 409/861-4141
FX: 409/861-0033
Texas Bar No. 05941200
Mdodson334@aol.com

ATTORNEY FOR PLAINTIFFS,
GATEWAY SENIOR HOUSING, LTD.,
GATEWAY SENIOR HOUSING I, LLC
and RICK J. DEYOE

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the attached First Amended Original Complaint has been filed electronically and forwarded to opposing counsel this 18 day of October, 2006.

*[signature]*

JOE MICHAEL DODSON